## JONES v. SOUTHERN KRAFT CORPORATION.
### No. 4952.

Court of Appeal of Louisiana.
Second Circuit.
April 1, 1935.

George Lester, McHenry, Montgomery, Lamkin & Lamkin, and Charles Titche, all of Monroe, for appellant.

Madison, Madison & Fuller, of Bastrop, for appellee.

MILLS, Judge.

On the night of February 2, 1932, a switch engine of the Missouri Pacific Railway Company was backing, and pushing a single box car into the yards and alongside the loading platform of a paper mill in Bastrop, La., owned by the Southern Kraft Corporation. The switch track was owned and controlled by the railway company, the right of way being furnished by defendant. The switching crew consisted of an engineer and fireman, who were on the engine, Hosea Scott, a brakeman, who was up ahead protecting a street crossing, and Jones, who, at the time of the accident, was riding on the footboard of the tender. Ahead of him, and completely blocking the light from the tender and that of a lantern carried by him, was the box car. There was no one and no light on its front end. Behind the footboard was the tender and the backing locomotive. The footboard extends across the back of the tender on each side of the coupling apparatus, with a nine-inch clearance. When the train, thus manned and pushed, was about midway of the loading platform, the footboard of the tender violently struck some obstruction on or beside the track, which forced it back and threw plaintiff off. He avoided being run over by catching and hanging onto the box car, but suffered an injured ankle and a break in the small bone of the leg just above the ankle. The train was brought almost to an immediate stop by the engineer, who had noticed plaintiff's fallen lantern.

Plaintiff underwent the usual treatment and suffered the pain and confinement incident to a broken leg. On July 15, 1932, he had recovered sufficiently to go back to work and has continued to work steadily since. The testimony of physicians shows that he has enjoyed a complete recovery.

The testimony is conflicting and confusing as to what object was struck by the tender. Defendant contends that it must have been one of a number of blocks and short pieces of board which were left along the track by trainmen, who used them in "chocking" cars. Plaintiff avers and contends that it was a board about two inches thick, ten inches wide and twelve or fourteen feet long, which had been negligently and carelessly left along the railroad track by defendant's employees.

The testimony shows that defendant was engaged in the manufacture of paper and not of lumber or boards; that, in loading cars, the interval between the car and the loading platform was spanned by iron boiler plates. When loading trucks at another place, boards were sometimes used. Plaintiff testifies that he saw the board on the night of the accident, and that it was run over by the engine and cut in two; yet he produces at the trial a complete board which is offered as the board which caused the accident. The board offered is of soft wood, unscarred except for two small indentations at one end. According to plaintiff's theory and some testimony on the part of his witnesses, this board was partly under the loading platform, with one end of it braced against a concrete pier. It extended out toward the railroad track where the other end was raised considerably above the ground by some tiles or pieces of concrete upon which it rested. The footboard was attached to the tender by two sturdy iron braces. It is apparent that a board braced against the concrete pier and struck by the tender with sufficient force to bend back the footboard would be completely shattered by the impact. Photographs show that the footboard did not extend further out than the axles of the box car. It is difficult to comprehend how the board, in the position testified to, could have missed striking the box car.

We are informed in the briefs that the learned trial judge rejected plaintiff's demand

because of his failure to satisfactorily prove his case. In view of the uncertainty existing in our minds after a thorough study of the record, we are not in a position to say that he was manifestly erroneous.

The paper mill was not in operation at the time of the accident. It employed two watchmen, who testified that they patrolled this track six times the night of the accident and saw no obstruction on or near the track. The brakeman, Hosea Scott, sent on ahead to protect the street crossing, evidently saw no dangerous obstruction or he would have removed it. While the defendant is not able to produce in court any broken blocks or planks to indicate that they struck the tender, the burden is not upon it to prove the cause of the accident.

Plaintiff has sought to invoke the doctrine of res ipsa loquitur, but we do not see how it can have application in this case, where a specific cause is alleged and sought to be proved. Furthermore, we are of the opinion that defendant has made out its defense of contributory negligence. Plaintiff was an experienced brakeman, having worked for the railroad company for more than fourteen years. His position on the footboard was such that he was confined in a small space between the tender, the box car, the coupling and the loading rack, and was completely shut off from any view of the track ahead or any view of obstructions that might be on it. He knew that Hosea Scott was up at the street crossing, and that no one was on the front of the box car maintaining a lookout.

The Missouri Pacific Railway Company publishes its safety rules in a pamphlet, which is furnished to all its employees. Rule 50 (A) provides that employees are prohibited from riding, "on engine footboard between engine and cars when cars are being pushed." The general safety rules, which appear at the beginning of the pamphlet, contain the following:

"(A) Safety is of the first importance in discharge of duty.

"(B) Obedience to the rules is essential to safety."

Plaintiff admits that he was familiar with these rules, but claims that there was no place of safety where he could have ridden; that he was instructed to remain on the engineer's side of the train, which placed him on the same side as the loading platform, and that the loading platform was so close to the cars that it was unsafe to ride upon the side of them; and that he could not ride on the top of the box car because he was afraid of wires. There is no proof that there were any wires in defendant's yards which would endanger a brakeman on top of a train. Photographs of the locus, showing the railroad track in each direction for quite a distance, fail to disclose any wire whatever above the track. That rule 50 (A) is wise and reasonable is shown by the helpless position in which its violation placed plaintiff. Had he been in a position to maintain any lookout whatever, or one that elevated him a safe distance above the track, his injury would have been avoided. The violation of this rule was a proximate cause of his injury. The law is well settled that the violation of a safety rule by plaintiff, which violation is a proximate cause of injury, constitutes negligence, and bars his recovery.

Plaintiff originally brought suit against his employer, under the Workmen's Compensation Act (Act No. 20 of 1914, as amended), in which an agreement of settlement for $280 and medical expenses was made the judgment of the court. In the present suit against the Southern Kraft Corporation, brought under article 2315 of the Civil Code, he is demanding damages totaling $6,841.10. From a judgment rejecting his demand he has appealed.

For the reasons assigned above, we are of the opinion that the judgment rendered below is correct. It is accordingly affirmed.